## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

KIMBERLY WROBLEWSKI,

     Plaintiff,

v.

                                       CASE NUMBER:
                                       HONORABLE:

CITY OF DETROIT, COUNTY OF WAYNE,
JAMES DIGUISEPPE, NICHOLAS GIAQUINTO,
BRIAN RINEHART, and DENNIS DOHERTY,
in their individual and official capacities,

     Defendants.

                                                                          /

CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
KRYSTINA R. DOSS (P77365)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com
krystina.doss@cjtrainor.com

                                                                           /

THERE IS A CURRENT CIVIL LAWSUIT PENDING IN THE WAYNE
COUNTY CIRCUIT COURT (CASE NUMBER 23-004413-CZ; HONORABLE
EDWARD J. JOSEPH) WHICH ARISES OUT OF THE SAME TRANSACTION
OR OCCURRENCE AND INVOLVES SOME OF THE SAME PARTIES AS
THE INSTANT LAWSUIT

## **VERIFIED COMPLAINT AND JURY DEMAND**

**NOW COMES** Plaintiff, by and through her attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and for her Verified Complaint against the above-named Defendants states as follows:

1.      Plaintiff is a resident of the Charter Township of Brownstown, located in the County of Wayne, State of Michigan.

2.      Defendant City of Detroit is a municipal corporation and governmental subdivision which is organized and existing under the laws of the State of Michigan.

3.      Defendant County of Wayne is a municipal corporation and governmental subdivision which is organized and existing under the laws of the State of Michigan.

4.      Defendant James DiGuiseppe was a police officer employed by the City of Detroit Police Department at all relevant times mentioned herein, and was acting under color of law, in his individual and official capacities, and within the course and scope of his employment.

5.      Defendant Nicholas Giaquinto is and/or was a police officer employed by the City of Detroit Police Department at all times mentioned herein, and was acting under color of law, in his individual and official capacities, and within the course and scope of his employment.

6.      Defendant Brian Rinehart is and/or was a law enforcement officer employed by the Wayne County Sheriff's Department at all times mentioned herein, and was

acting under color of law, in his individual and official capacities, and within the course and scope of his employment.

7.     Defendant Dennis Doherty is and/or was an assistant prosecuting attorney employed by the Wayne County Prosecutor's Office at all times mentioned herein, and was acting under color of law, in his individual and official capacities, and within the course and scope of his employment.

8.     This lawsuit arises out of Defendants' violations of Plaintiff's federal constitutional rights under the United States Constitution, including but not limited to the Fourth and Fourteenth Amendments, and consequently, Plaintiff has a viable claim for damages under 42 U.S.C. § 1983 and § 1988.

9.     Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights].

10.    This Court also has supplemental jurisdiction over the state law claims brought herein.

11.    That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) not including interest, costs, and attorney fees.

## FACTS

12.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

13.     Upon information and belief, Defendant DiGuiseppe was hired as a City of Detroit police officer in 1996, and remained so employed during all events set forth in this Complaint.

14.     Upon information and belief, Defendant Giaquinto was hired as a City of Detroit police officer in 1993, and currently remains employed by the City of Detroit Police Department.

15.     Plaintiff and Defendant DiGuiseppe were married in March of 2016.

16.     Defendant DiGuiseppe was a police officer with the Detroit Police Department before he and Plaintiff were married, while they were married, and after the two were divorced.

17.     Defendant Giaquinto and Defendant DiGuiseppe worked together at the Detroit Police Department for many years, including but not limited to the time of the underlying events in this case; upon information and belief, Defendant Giaquinto was Defendant DiGuiseppe's commanding officer.

18.     Defendant DiGuiseppe and Defendant Giaquinto were long-time friends; in fact, Defendant Giaquinto and his spouse vacationed with Defendant DiGuiseppe and Plaintiff and they all otherwise socialized together at various times prior to the dissolution of the marriage between Plaintiff and Defendant DiGuiseppe.

19. Defendant Diguiseppe added Plaintiff as a joint owner to an account at Bank of America; and likewise, Plaintiff added Defendant DiGuiseppe as a joint owner on one of her accounts.

20. On April 12, 2016, Plaintiff was added as a joint account owner to Defendant DiGuiseppe's checking and savings accounts held at Bank of America, and they both signed a Bank of America signature card which established a DDA account, which is a type of bank account that one can withdraw from on demand.

21. The Bank of America accounts clearly listed both Plaintiff and Defendant DiGuiseppe as joint owners of the accounts with rights of survivorship.

22. The marriage between Plaintiff and Defendant DiGuiseppe ultimately dissolved and ended in a divorce, which became final on or about May 23, 2019.

23. The divorce was very contentious.

24. On May 23, 2019, a *Consent Judgment of Divorce* ("CJOD") was entered in the Wayne County Circuit Court (Case Number 18-114725-DO; Honorable Charlene Elder) which thereby dissolved the marriage of Plaintiff and Defendant DiGuiseppe and addressed various aspects of property division.

25. The CJOD was silent as to the distribution of funds held in the joint bank accounts of Plaintiff and Defendant DiGuiseppe at Bank of America.

26. After the CJOD was entered, Defendant DiGuiseppe closed out the joint savings account, but did not close the joint checking account.

27.     On or about November 4, 2019, Plaintiff lawfully withdrew $4,388.39 from the still existing joint checking account at Bank of America, which continued to list her as a named account holder, and then Plaintiff closed the account.

28.     At the time Plaintiff withdrew the money and closed the checking account, she presented her government issued identification, marriage license, and the CJOD at the Bank of America branch.

29.     The Bank of America branch where Plaintiff made the lawful November 4, 2019, withdrawal was located in Lincoln Park, Michigan.

30.     On or about November 5, 2019, Defendant DiGuiseppe entered the Westland Police Department and made a false criminal complaint against Plaintiff and stated that she had stolen money from the subject Bank of America bank account; whereas, the account was actually a jointly held account.

31.     Prior to initiating the criminal complaint or ultimate criminal action against Plaintiff, Defendant DiGuiseppe did not take up the matter regarding the withdrawal of funds with the Court that handled the divorce, nor did he file any sort of civil action regarding same against Plaintiff for a determination of distribution.

32.     Defendant DiGuiseppe falsely stated to the police officer taking his complaint that his divorce was finalized, and that the judge ordered that he would be the sole owner of the subject Bank of America account; which was not true.

33.     Defendant DiGuiseppe advised the Westland police officer that he desired to prosecute Plaintiff for stealing money out of his account.

34.     Defendant DiGuiseppe made his complaint against Plaintiff with the Westland Police Department, despite the banking transaction having occurred in Lincoln Park, and despite the fact that Plaintiff lived in Brownstown.

35.     On or about November 6, 2019, Westland police officer Kameron Sleep was assigned to investigate the matter.

36.     Part of officer Sleep's investigation involved reviewing the CJOD, which was silent as to anything involving joint accounts; and his review of the account log associated with the bank account at issue which contained both the names of Plaintiff and Defendant DiGuiseppe.

37.     Part of officer Sleep's investigation also involved consulting with Westland assistant city attorney McNamara.

38.     After his investigation into the matter, Officer Sleep advised Defendant DiGuiseppe that there was no criminal action to pursue, and that the matter was a civil matter; Officer Sleep closed his investigation.

39.     Unhappy and disagreeing with Officer Sleep's assessment that there was no criminal matter to pursue, Defendant DiGuiseppe then contacted Defendant Giaquinto, his commanding officer and long-time friend, for his assistance in getting Plaintiff (his ex-wife) charged with a crime and prosecuted.

40.     Defendant DiGuiseppe and Defendant Giaquinto knew that the lawful withdrawal of funds from the joint bank account at issue did not occur within the City of Detroit's jurisdiction; yet because of their friendship, Defendant Giaquinto agreed to help out his friend (Defendant DiGuiseppe) in this matter and find a way around the jurisdictional issue and help prosecute Plaintiff.

41.     When Defendant DiGuiseppe contacted Defendant Giaquinto and told him what had happened, Defendant Giaquinto then enlisted the assistance of Defendant APA Doherty.

42.     Defendant Doherty expressed an interest in prosecuting Plaintiff, as did Defendants DiGuiseppe and Giaquinto, and they all worked together to investigate the matter and to ensure that Plaintiff was arrested and prosecuted.

43.     As part of his investigation into the matter, Defendant Doherty requested that Defendant Giaquinto send him documents and information such as the CJOD and Bank of America bank statements to review, which Defendant Giaquinto did.

44.     Upon information and belief, Defendant Doherty advised Defendant Giaquinto that Plaintiff had committed a crime and they agreed to prosecute Plaintiff.

45.     Upon information and belief, Defendant Doherty and/or Defendant Giaquinto contacted a detective from the Wayne County Sheriff's Office in order to establish jurisdiction over Plaintiff.

46.     Defendant Giaquinto then contacted Defendant Rinehart of the Wayne County Sheriff's Department, who agreed to draft and swear to the arrest warrant which would be issued against Plaintiff.

47.     Defendant Giaquinto then drafted a preliminary Investigator's Report (warrant request) and provided the draft report to Defendant Rinehart; Defendant Rinehart then ultimately signed, dated, and swore under oath, an Investigator's Report; and Defendant Doherty signed off on same as well.

48.     The Investigator's Report which was reviewed, approved, and signed by Defendant Rinehart and Doherty contained material misrepresentations and otherwise omitted exculpatory information in order to make it appear that Plaintiff had committed a crime, when she had not.

49.     On January 13, 2021, Defendant Rinehart appeared before Judge David J. Zelenak of the 25th District Court to swear to and sign a felony complaint and to obtain an arrest warrant against Plaintiff.

50.     While under oath and swearing to tell the truth, Defendant Rinehart falsely stated that Plaintiff intentionally removed money from the subject Bank of America account that she did not have access to.

51.     Defendant Rinehart failed to advise the Court that the account from which Plaintiff withdrew funds was a joint account which was in the names of both Plaintiff and Defendant DiGuiseppe.

52.    Despite being under oath, when asked by the judge whose account it was,

Defendant Rinehart testified that it belonged to only Defendant DiGuiseppe, despite

knowing that the account was jointly held by both Plaintiff and Defendant

DiGuiseppe.

53.    While still under oath, Defendant Rinehart continued to falsely tell the Court

that Plaintiff had been advised by the divorce court that Plaintiff no longer had any

rights to assets, including bank accounts after the divorce was finalized, and that she

still willingly, knowingly, and unlawfully withdrew money from the subject account;

all of which was not true.

54.    Upon information and belief, soon after the warrant for Plaintiff's arrest had

been signed, Defendant DiGuiseppe contacted an acquaintance and fellow police

officer of the Brownstown Police Department and advised him of the pending

warrant for Plaintiff's arrest and requested that Plaintiff be picked up.

55.    On or about January 15, 2021 (which was the Friday before the Martin Luther

King, Jr. holiday), Plaintiff was arrested at her home.

56.    Plaintiff was incarcerated from January 15, 2021, through January 19, 2021.

57.    Because of the holiday, which Defendant DiGuiseppe and Defendant Rinehart

were aware of, Plaintiff was not arraigned until January 19, 2021, thereby causing

Plaintiff to stay in jail for extra time.

58. Plaintiff was falsely charged with larceny—more than $1,000.00 but less than $20,000.00 and receiving and concealing stolen property.

59. On April 6, 2021, a probable cause conference was held in the 25th District Court regarding the criminal case involving Plaintiff, and the criminal case was dismissed.

60. Each of the individually-named Defendants used their police badges and positions of State authority to wrongfully accuse Plaintiff of crimes she did not commit and unnecessarily caused her to be arrested and prosecuted.

61. As a result of Defendants' unlawful actions and/or inactions, Plaintiff has suffered injuries and damages.

**COUNT I**
**VIOLATION OF THE FOURTH AMENDMENT**
**42 U.S.C. § 1983—ILLEGAL SEARCH AND SEIZURE**
**AS TO DEFENDANTS DIGUISEPPE, GIAQUINTO, RINEHART, AND**
**DOHERTY**

62. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

63. That the Fourth Amendment to the United States Constitution establishes that Plaintiff has the right to be free from the deprivation of life, liberty, and bodily security without due process of law and to be free from unreasonable searches and seizures.

64.     At all material times, Defendants acted under color of law; and they acted unreasonably in that they violated Plaintiff's Fourth Amendment rights when they falsely arrested and detained Plaintiff or otherwise had a significant role in the arrest and detention of Plaintiff, despite a complete lack of probable cause or exigent circumstances.

65.     Defendants acted unreasonably and failed in their duties when they falsely arrested/detained/seized Plaintiff and/or otherwise took affirmative steps to ensure that Plaintiff would be falsely arrested/detained/seized, without considering the totality of the circumstances and/or ignoring same.

66.     Defendants acted under color of law and are otherwise not entitled to qualified and/or absolute immunity, because they violated Plaintiff's clearly established Fourth Amendment rights to be free from unreasonable searches and seizures.

67.     Defendants' unlawful and unconstitutional actions and/or inactions were the direct and proximate cause of the deprivation of Plaintiff's constitutional rights.

68.     As a proximate result of the violations and/or deprivations of Plaintiff's constitutional rights by Defendants, Plaintiff has a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. § 1983, together with costs, interest, and attorney fees as set forth in 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of

Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

## COUNT II
## VIOLATION OF THE FOURTH AMENDMENT
## 42 U.S.C. § 1983—MALICIOUS PROSECUTION
## AS TO DEFENDANTS DIGUISEPPE, GIAQUINTO, RINEHART, AND DOHERTY

69.     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

70.     Plaintiff was unlawfully incarcerated and criminally charged for crimes that Defendants knew or should have known that Plaintiff did not commit.

71.     Defendant did not have any actual knowledge or probable cause to believe that the criminal charges against Plaintiff would ultimately succeed, and thereby acted unreasonably when they initiated and/or continued a malicious prosecution against Plaintiff and for which the criminal case was dismissed.

72.     Defendants initiated, caused, instituted, and/or continued criminal proceedings against Plaintiff and their unlawful actions do not afford them the protections of absolute or qualified immunity.

73.     Defendants were the initiators of Plaintiff's wrongful prosecution because they omitted material facts and exculpatory evidence that showed Plaintiff had not committed a crime.

74.    Defendants falsely and recklessly built a criminal case against Plaintiff, and this exemplified their callous indifference to Plaintiff's life and liberty.

75.    Defendants lacked actual knowledge or probable cause to believe that any criminal charges against Plaintiff would succeed, and acted unreasonably when they initiated, caused, instituted, and/or caused the malicious prosecution against Plaintiff to continue.

76.    The criminal case against Plaintiff was dismissed.

77.    Defendants failed to properly and thoroughly conduct an investigation, manufactured probable cause, and otherwise failed to tell the truth, in order to get Plaintiff arrested and prosecuted for criminal charges that Defendants knew Plaintiff did not commit.

78.    Defendants knew that they falsely and recklessly built a case against Plaintiff, and this was exemplified by their callous indifference to Plaintiff's life, liberty, and other constitutional rights.

79.    Defendants are not entitled to qualified and/or absolute immunity because there was no basis to reasonably conclude that probable cause existed to prosecute Plaintiff.

80.    All of the acts and/or omissions by each Defendant were the direct and proximate cause of Plaintiff's malicious prosecution, thereby violating Plaintiff's Fourth Amendment rights.

81.     As a proximate result of the violations and/or deprivations of Plaintiff's constitutional rights by Defendants, Plaintiff has a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. § 1983, together with costs, interest, and attorney fees as set forth in 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

**COUNT III**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**42 U.S.C. § 1983—SUBSTANTIVE DUE PROCESS**
**AS TO DEFENDANTS DIGUISEPPE, GIAQUINTO, RINEHART, AND DOHERTY**

82.     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

83.     Defendants were at all times relevant to this action acting under color of law when they violated Plaintiff's Fourteenth Amendment rights.

84.     That the Fourteenth Amendment to the United States Constitution prohibits a State from depriving Plaintiff of a property right, liberty interest, bodily integrity, reputation, and/or a "good name" without due process of law.

85.     Under the Due Process Clause of the Fourteenth Amendment, citizens have clearly established rights as to personal security and bodily integrity.

86.    That the Fourteenth Amendment to the United States Constitution protects Plaintiff from arbitrary and capricious actions by the government.

87.    At all pertinent times, Plaintiff had, and has, a liberty interest in her own good name and good character.

88.    As a result of Defendants' actions, Plaintiff has been mischaracterized as a criminal and her good character has otherwise been maligned.

89.    Defendants' false arrest/seizure/detainment, malicious prosecution, and false statements have deprived Plaintiff of her good name and such unlawful actions by Defendants were arbitrarily and capriciously undertaken.

90.    As a result of the dangers created by Defendants, Plaintiff suffered a deprivation of clearly established rights protected and secured by the Fourteenth Amendment to the United States Constitution, including but not limited to her good name, reputation, integrity, honor, as well as her liberty interest in bodily security and integrity.

91.    Defendants' acts were at all times reckless, intentional, and/or deliberately indifferent and deprived Plaintiff of her rights under the Fourteenth Amendment to the United States Constitution.

92.    As a result of Defendants' violations/deprivations of Plaintiff's constitutional rights, Plaintiff has a viable claim for compensatory and punitive damages pursuant

to 42 U.S.C. § 1983 together with interest, costs, and attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

**COUNT IV**
**42 U.S.C. § 1983 CIVIL CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS**
**AS TO DEFENDANTS DIGUISEPPE, GIAQUINTO, RINEHART, AND DOHERTY**

93.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

94.    The individually-named Defendants had an agreement among themselves, and otherwise conspired and committed malicious acts in furtherance of their conspiracy, to deprive Plaintiff of her civil rights under the law, thereby depriving Plaintiff of her rights and privileges granted to citizens of the United States of America.

95.    The individually-named Defendants acted in concert to have Plaintiff unlawfully arrested and prosecuted for crimes that Plaintiff did not commit, and for which there was no probable cause.

96.    That the individually-named Defendants conspired and committed acts in furtherance of a conspiracy to have Plaintiff falsely arrested and maliciously prosecuted, thereby depriving Plaintiff of her civil rights.

97.    Each of the individually-named Defendants knew of the plan to falsely arrest and maliciously prosecute Plaintiff for crimes they knew she did not commit, as well as make false and material misrepresentations so as to ensure an arrest warrant would be issued; and they otherwise acquiesced in the scheme and plan to have Plaintiff arrested before a holiday and prosecuted for crimes she did not commit.

98.    Each of the individually-named Defendants acted in furtherance of their conspiracy by engaging in one or more of the acts set forth in the Complaint, in addition to, but not limited to the following:

    a.    Causing and/or permitting the unlawful arrest and detainment of Plaintiff;

    b.    Causing and/or allowing the arrest and prosecution of Plaintiff to continue despite the unlawfulness of same and despite that the matter was, at best, a civil matter and not a criminal matter;

    c.    Failing to be truthful and forthright in regard to the facts and circumstances presented to the Court;

    d.    Interfering with and otherwise violating Plaintiff's civil rights; and

e. Ensuring that Plaintiff's incarceration was unnecessarily prolonged by deliberately timing her arrest before an extended holiday weekend, knowing that the Courts would be closed on the Monday following Plaintiff's arrest.

99. Defendants agreed among themselves to pursue and continue Plaintiff's arrest and prosecution despite the lack of probable cause to do same.

100. As a direct and proximate result of the conspiracy and the acts committed by Defendants in furtherance thereof, Plaintiff suffered injuries and damages.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

## COUNT V
## DEFENDANT CITY OF DETROIT AND DEFENDANT COUNTY OF WAYNE'S CONSTITUTIONAL VIOLATIONS

101. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

102. That the Fourth Amendment's prohibition against unreasonable searches and seizures prohibits police officers and State actors from falsely arresting/detaining citizens without probable cause or exigent circumstances or otherwise undertaking such actions with evil motive or purpose.

103.   That the Fourth Amendment's prohibition against unlawful prosecutions prohibits police officers and state actors from moving forward with criminal prosecutions against citizens that have no basis in the law or otherwise undertaking such actions with evil motive or purpose.

104.   That the Fourteenth Amendment prohibits a police officer or State actor from depriving citizens of a property right, liberty interest, bodily integrity, reputation, and/or a "good name" without due process of law.

105.   Defendant City of Detroit and Defendant County of Wayne permitted customs, practices, and/or policies which resulted in the violations of Plaintiff's constitutional rights complained of herein.

106.   These customs, practices, and/or policies included, but were not limited to, the following:

   a.      Failing to adequately train and/or supervisee their officers and/or employees so as to prevent violations of citizens' constitutional rights;

   b.      Failing to adequately train and/or supervise their police officers and/or employees regarding lawful arrests and prosecutions;

   c.      Failing to adequately train and/or supervise their police officers and/or employees as to what matters constitute civil matters as opposed to criminal matters;

d.      Failing to adequately train and/or supervise their police officers and/or employees to conduct thorough and complete investigations so as not to violate the civil rights of citizens;

e.      Failing to adequately train and/or supervise their police officers and/or employees so as to ensure that the legal process is not abused or mis-used or that the legal process is not otherwise used for personal gain;

f.      Failing to adequately supervise, review, and/or discipline police officers and/or employees whom Defendant City of Detroit or Defendant Wayne County knew or should have known were prone to violate citizens' constitutional rights; thereby permitting and/or encouraging their police officers and/or employees to engage in unlawful conduct;

g.      Failing to adequately train and/or supervise their police officers and/or employees in the proper policies and procedures for (1) establishing probable cause for arrest, (2) ensuring that law enforcement jurisdictional boundaries are recognized, (3) and ensuring that legal process is not abused and/or otherwise used for personal gain or other unlawful purpose;

h.      Failing to ensure that its police officers and/or employees do not violate citizens' constitutional rights; and

i.      Generally permitting unlawful and/or unconstitutional customs, policies, and/or practices to exist.

107. Defendants' conduct demonstrated a substantial lack of concern for whether an injury resulted.

108. Defendants' acts and/or indifference and/or omissions were the direct and proximate cause of Plaintiff's injuries and damages.

109. Plaintiff has a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 plus interest, costs, and attorney fees as set forth in 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

**COUNT VI**
**CIVIL CONSPIRACY**
**PURSUANT TO STATE LAW**
**AS TO DEFENDANTS DIGUISEPPE, GIAQUINTO, RINEHART, AND DOHERTY**

110. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

111. The individually-named Defendants had an agreement among themselves, and otherwise conspired and committed malicious acts in furtherance of their conspiracy to deprive Plaintiff of her civil rights under the law, thereby depriving Plaintiff of her rights and privileges granted to citizens of the United States of America.

112. The individually-named Defendants acted in concert to have Plaintiff unlawfully arrested and prosecuted for crimes that Plaintiff did not commit, and for which there was no probable cause.

113. That the individually-named Defendants conspired and committed acts in furtherance of a conspiracy to have Plaintiff falsely arrested and maliciously prosecuted, thereby depriving Plaintiff of her civil rights.

114. Each of the individually-named Defendants knew of the plan to falsely arrest and maliciously prosecute Plaintiff for crimes they knew she did not commit, as well as make false and material misrepresentations so as to ensure that an arrest warrant would be issued, and otherwise acquiesced in the scheme and plan to have Plaintiff arrested before a holiday and prosecuted for crimes she did not commit.

115. Each of the individually-named Defendants acted in furtherance of their conspiracy by engaging in one or more of the acts set forth in the Complaint, in addition to, but not limited to the following:

   a.   Causing and/or permitting the unlawful arrest and detainment of Plaintiff;

   b.   Causing and/or allowing the arrest and prosecution of Plaintiff to continue despite the unlawfulness of same and despite that the matter was, at best, a civil matter and not a criminal matter;

     c.     Failing to be truthful and forthright in regards to the facts and circumstances presented to the Court;

     d.     Interfering with and otherwise violating Plaintiff's civil rights; and

     e.     Ensuring that Plaintiff's incarceration was unnecessarily prolonged by deliberately timing her arrest before an extended holiday weekend, knowing that the Courts would be closed.

116.  Defendants agreed among themselves to pursue and continue Plaintiff's arrest and prosecution despite the lack of probable cause.

117.  As a direct and proximate result of the conspiracy and the acts in furtherance thereof, Plaintiff suffered injuries and damages.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

**COUNT VII**
**GROSS NEGLIGENCE**
**AS TO DEFENDANTS DIGUISEPPE, GIAQUINTO, RINEHART, AND DOHERTY**

118.  Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

119.  The governmental agencies that employed the individually-named Defendants were engaged in the exercise or discharge of a governmental function.

120. That the conduct, actions, and/or inactions of the individually-named Defendants amounted to gross negligence that was the proximate cause of Plaintiff's injuries and damages.

121. Defendants' actions and/or inactions were such that they completely ignored the potential risk of injury to Plaintiff.

122. At all times relevant herein, Defendants had a duty to perform their employment activities so as not to endanger or cause harm to Plaintiff.

123. Notwithstanding these duties, the individually-named Defendants breached their duties with deliberate indifference and with gross negligence and without regard to Plaintiff's rights and welfare, which caused injuries and damages to Plaintiff.

124. The individually-named Defendants knew or should have known that by breaching these duties, harm would come to Plaintiff.

125. That the individually-named Defendants breached various duties owed to Plaintiff including but not limited to the following:

    a.    Treating Plaintiff with dignity and respect as may be consistent with her rights under the law and legitimate law enforcement activity;

    b.    Avoiding foreseeable injury to Plaintiff, while investigating or pursuing law enforcement activities; and

c. Avoiding conduct or a failure to act that was so reckless that it demonstrates a substantial lack of concern for whether an injury will result.

126. Defendants engaged in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results, and thereby caused Plaintiff's injuries and damages.

127. That as a direct and proximate result of the individually-named Defendants' indifferent/grossly negligent acts and/or omissions, Plaintiff suffered damages and injuries.

128. That the individually-named Defendants' actions were so egregious and so outrageous that Plaintiff's damages were heightened and made more severe, thus Plaintiff is entitled to exemplary damages.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

## COUNT VIII
## ABUSE OF PROCESS
## AS TO DEFENDANTS DIGUISEPPE, GIAQUINTO, RINEHART, AND DOHERTY

129. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

130. Defendants abused the criminal justice process by using it for their own ulterior motive and/or purpose to cause vexation, trouble, embarrassment, and damage to Plaintiff's community reputation.

131. Defendants' purpose in initiating and/or bringing the criminal charges against Plaintiff was not to bring an offender to justice, but to harass Plaintiff.

132. That the making of false statements and material misrepresentations to a judicial official and/or others was deliberate and willful, and was otherwise committed for no lawful purpose whatsoever.

133. That the allegations and mis-use of the criminal justice process and the criminal justice system were improper since Defendants knew or should have known that the allegations regarding Plaintiff were false and would not otherwise succeed.

134. That as a result of Defendants' actions, Plaintiff suffered injuries and damages.

135. There was a lack of probable cause for the criminal prosecution lodged against Plaintiff, and Defendants were or should have been aware of same.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

Respectfully Submitted,

CHRISTOPHER TRAINOR & ASSOCIATES

**/s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
KRYSTINA R. DOSS (P77365)
Attorneys for Plaintiffs
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
shawn.cabot@cjtrainor.com

Dated:  December 26, 2023

## **VERIFICATION**

I have read the foregoing document and declare that the information contained therein is true to the best of my information, knowledge, and belief.

Dated: 12-27-23

Kimberly Wroblewski
Plaintiff

28

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

KIMBERLY WROBLEWSKI,

      Plaintiff,

v.                                                    CASE NUMBER:
                                                      HONORABLE:

CITY OF DETROIT, COUNTY OF WAYNE,
JAMES DIGUISEPPE, NICHOLAS GIAQUINTO,
BRIAN RINEHART, and DENNIS DOHERTY,
in their individual and official capacities,

      Defendants.

_____/

CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
KRYSTINA R. DOSS (P77365)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com
krystina.doss@cjtrainor.com

_____/

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, by and through her attorneys, CHRISTOPHER

TRAINOR & ASSOCIATES, and hereby makes a demand for a trial by jury.

Respectfully Submitted,

CHRISTOPHER TRAINOR & ASSOCIATES


<u>**/s/ Shawn C. Cabot**</u>
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
KRYSTINA R. DOSS (P77365)
Attorneys for Plaintiffs
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

Dated:  December 26, 2023