UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KIMBERLY WROBLEWSKI,

    Plaintiff,

v.                                      CASE NUMBER: 24-cv-10011
                                          HON: MARK A. GOLDSMITH

CITY OF DETROIT, COUNTY OF WAYNE,
JAMES DIGUISEPPE, NICHOLAS GIAQUINTO,
BRIAN RINEHART, and DENNIS DOHERTY,

    Defendants.

_____

CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
KRYSTINA R. DOSS (P77365)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
shawn.cabot@cjtrainor.com
krystina.doss@cjtrainor.com

CITY OF DETROIT LAW DEPARTMENT
BEN PATTERSON (P85118)
Attorneys for Def City of Detroit
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-5082 / (313) 224-5505 -fax
Ben.Patterson@detroitmi.gov

WAYNE COUNTY CORPORATION COUNSEL
JOHN C. BOUFFORD (P55313)
Attorneys for Defs. County of
Wayne, Rinehart, and Doherty
500 Griswold Street, 30th Floor
Detroit, Michigan 48226
313-224-0572
jboufford@waynecounty.com

FOSTER, SWIFT, COLLINS & SMITH, PC
DORA A. BRANTLEY (P49088)
BRANDON WADDELL (P81494)
Attys. for Defs. Giaquinto & DiGuiseppe
28411 Northwestern Highway
Suite 500
(248) 539-9900
dbrantley@fosterswift.com

_____

# DEFENDANT CITY OF DETROIT'S
# MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant, the City of Detroit ("the City"), by and through its undersigned counsel, and for the reasons addressed in the brief below, hereby moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56.

As more fully addressed in the Brief below, the City is entitled to summary judgment. First, Plaintiff has failed to identify any policy, practice, or procedure to support a *Monell* claim against the City of Detroit. Second, if the Court grants Defendant Officers Nicholas Giaquinto's and James DiGuiseppe's anticipated Motion for Summary Judgment, finding no underlying constitutional violation, the City cannot be held liable under *Monell*.

Pursuant to Local Rule 7.1(a) and the Court's Case Management and Scheduling Order, the undersigned counsel, Ben Patterson, certifies that I personally spoke with opposing counsel, Shawn Cabot, on January 23, 2025, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief. Opposing counsel expressly denied concurrence.

WHEREFORE, Defendant City of Detroit respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter judgment dismissing Plaintiff's case against the City with prejudice.

DATED: February 14, 2025          Respectfully submitted,

                                               /s/ *Ben Patterson*
                                               **BEN PATTERSON (P85118)**
                                               Senior Assistant Corporation Counsel

## STATEMENT OF THE ISSUES PRESENTED

<u>Question 1</u>: Has Plaintiff failed to identify any requisite policy, practice, or procedure to support a *Monell* claim against the Defendant City of Detroit?

<u>Answer</u>: Yes.

<u>Question 2</u>: If the Court grants Defendant Officers Nicholas Giaquinto's and James DiGuiseppe's anticipated Motion for Summary Judgment, finding no underlying constitutional violation, must the Court also dismiss the *Monell* claim against the City of Detroit?

<u>Answer</u>: Yes.

# **STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY**

1. Federal Rule of Civil Procedure 56

2. *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)

3. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)

4. *Pembauer v. Cincinnati*, 475 U.S. 469 (1986)

5. *Wilson v. Morgan*, 477 F.3d 326 (6th Cir. 2007)

6. *Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008)

# **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## STATEMENT OF MATERIAL FACTS

1. Plaintiff Kimberly Wroblewski ("Plaintiff") asserts one claim against the Defendant City of Detroit ("the City") in her Complaint, which is Count V, alleging that the City "permitted customs, practices, and/or policies which resulted in the violations of Plaintiff's constitutional rights complained of herein." (Ex. 1 at PageID.20 ¶ 105.)

2. The City served Plaintiff with Interrogatories, asking her to "Identify any and all policies, practices, and/or customs of the City of Detroit, if any, that Plaintiff alleges support Count V of Plaintiff's Complaint," and "State all factual support, if any, for Plaintiff's alleged Count V against the City Of Detroit." (Ex. 2 at 2, 5.)

3. Plaintiff responded to these Interrogatories by listing several alleged department policy violations of the "Detroit Police Department Code of Conduct" by Defendants Nicholas Giaquinto and James DiGuiseppe. (Ex. 2 at 2-5.)

4. The alleged department "policy violations" listed by Plaintiff in the Interrogatory Response included the following: In violation of "102.3 - 6.6 Authority, Misuse," that "Defendant Giaquinto and Defendant DiGuiseppe used their badges, titles and status in the Detroit community to enlist Defendant Rinehart and Defendant Doherty to assist in the false report and arrest warrant of

1

Plaintiff." (Ex. 2 at 3.)

5. Other alleged department "policy violations" listed by Plaintiff in the Interrogatory Responses included that Defendants Giaquinto and DiGuiseppe violated DPD policies "102.3 - 6.7 City Property," "102.3-6.14 Job Standards," "102.3-6.17 Off Duty Police Action," "102.3-6-22 Truthfulness," and "102.3-7.1 Communication." (Ex. 2 at 3-4.)

6. The DPD Manual Code of Conduct Section "102.3-6-17 Off Duty Police Action" prohibits the following: "Rendering assistance or advising parties in civil matters (except to prevent a breach of the peace or to quell a disturbance actually commenced)," and "Taking police action as a representative of the DPD, off-duty and outside the jurisdiction of the city of Detroit, absent a felony committed in the member's presence that presents a grave risk to the public welfare." (Ex. 3 at DET0060.)

7. The DPD Manual Code of Conduct Section "102.3 - 6.6 Authority, Misuse" prohibits the following: "Misuse of LEIN, NCIC or any other department or other law enforcement database," and "Using authority or position for financial gain or for obtaining privileges or favors." (Ex. 3 at DET0055.)

8. The DPD Manual Section 101.7 - 3 "Geographic Jurisdiction," includes: "Detroit officers have authority only in the City of Detroit." (Ex. 3 at DET0041.)

2

9. The DPD Manual, Special Orders, and Training Directives also include extensive policies and training regarding the Fourth Amendment and requirements for lawful searches, seizures, warrants, and arrests. (Ex. 3 at DET0025 – 40, DET0069 – 82, DET0094 – 104.)

10. DPD Special Order 22-34 reinforces that: "Engaging or attempting to take police action when off duty is principally regarded as a prohibited act by DPD Code of Conduct with only specific exceptions akin to exigent circumstances. Refer to Department Manual Directive 102.3, Code of Conduct." (Ex. 3 at DET0033.)

11. When Plaintiff was asked at her deposition "why have you sued the City of Detroit," Plaintiff responded as follows: "Because the arrest warrant was written on a Detroit warrant" and "Because Jim [DiGuiseppe] worked for Detroit and was able to use his police powers to get me arrested." (Ex. 4 at 72:18-25.)

12. At deposition, when Plaintiff was asked, "Are you aware of any policies or procedures or customs in the City of Detroit that would have led to these actions taken by the officers," Plaintiff responded as follows: "I am sure there's a lot of them. If you've got an under -- you know, if your boss [Nicholas Giaquinto] is saying, yeah, I'll help you and not get the facts, not do the thorough investigation, you're strictly taking the word of one person, I mean if that's how an investigation is done, then I don't -- you know, it -- I guess I just don't agree with

3

that." (Ex. 4 at 77:5-20.)

13. At deposition, when Plaintiff's Counsel asked Internal Affairs Sergeant Ken Butler, "what is the department code of conduct for police officers, that's kind of like your Bible or your rule book of how you're supposed to conduct yourself as a Detroit police officer; is that correct," Sgt. Butler answered as follows: "I'd agree with that." (Ex. 5 at 18:12-16.)[1]

14. Sgt. Butler explained that the Code of Conduct is "kind of like the basis of everything," and he further testified concerning the various examples of training that DPD does related to the Code of Conduct, including in the Police Academy, part of the 40-hour (now 24-hour) block training, electronic updates provided through the MAS system, administrative messages, and "role call training at the start of your shift." (Ex. 5 at 67:9 – 68:17, 16:7 – 18:16.)

15. Sergeant Deanna Wilson also testified concerning the different methods of training DPD officers receive regarding the DPD Code of Conduct as follows: it is "disseminated through teletypes, through special orders, through training directives, through our management awareness system, policies and procedures," there is "rollcall dissemination of the Code of Conduct and it has to

---

[1] The Confidentiality designations for the Ken Butler and Deanna Wilson depositions were made by undersigned counsel for the City of Detroit, and those are hereby removed for the subject pages publicly filed with this Motion as Exhibits 5 and 6 only. All other pages of those transcripts remain designated as Confidential Subject to the Protective Order.

4

be read usually seven days at rollcall," and "I also have a clipboard where it's maintained so they can review it." (Ex. 6 at 14:5 – 17:25.)

## INTRODUCTION

Plaintiff has failed to identify any policy, practice, or procedure to support a *Monell* claim against the Defendant City of Detroit ("the City"). Plaintiff's Interrogatory Responses concerning her *Monell* claim allegations against the City reveal that Plaintiff misunderstands what is required to support such a claim. Indeed, Plaintiff has it backwards. Instead of identifying a City policy, practice, or procedure that was the driving force behind any alleged constitutional violation, Plaintiff identified Detroit Police Department Code of Conduct policies that Plaintiff asserts Defendants Giaquinto and DiGuiseppe violated. Yet how can a policy be the cause of a constitutional violation, as is required for a *Monell* claim, when the officers' alleged unconstitutional conduct was <u>prohibited</u> by the policy? Plaintiff's upside-down *Monell* claim based on Officers' alleged violations of City policy must be dismissed. Summary judgment should be granted for the City.

Furthermore, if the Court grants Defendant Giaquinto's and DiGuiseppe's anticipated Motion for Summary Judgment, finding no underlying constitutional violation, the City cannot be held liable under *Monell*. That would be an additional basis for dismissing Plaintiff's lone claim against the City on summary judgment.

5

## LEGAL STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec Indus Co, Ltd v Zenith Radio Corp*, 475 US 574, 587; 106 S Ct 1348; 89 L Ed 2d 538 (1986). Once the movant in a Rule 56 motion identifies the issue as to which it maintains there is no genuine issue of material fact, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

In *Anderson v Liberty Lobby, Inc*, 477 US 242, 251–52; 106 S Ct 2505; 91 L Ed 2d 202 (1986), the Supreme Court emphasized that not just any issue of fact is sufficient to avoid summary judgment. Rather, the issue must be both material and genuine. A fact issue is material only if "it might affect the outcome of the suit under the governing law." 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). A fact issue is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

6

Allegations and speculation are not enough; a plaintiff must submit some evidence to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252; *see*, *e.g.*, *Gooden v. Memphis Police Dep't*, 67 Fed. Appx. 893, 895 (6th Cir. 2003) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence....").

## LAW AND ARGUMENT

Plaintiff's only claim against the City of Detroit is Count V, which is a *Monell* claim alleging that the City "permitted customs, practices, and/or policies which resulted in the violations of Plaintiff's constitutional rights complained of herein." (Ex. 1 at PageID.20 ¶ 105.) This Motion for Summary Judgment should be granted, as the Court must dismiss Plaintiff's *Monell* Claim against the City of Detroit.

First, in order to establish a claim under 42 U.S.C. § 1983 against a municipality, a plaintiff must plead and prove a custom, policy, and/or practice which caused a violation of the plaintiff's constitutional rights. *Pembauer v. Cincinnati*, 475 U.S. 469, 477-80; 106 S.Ct. 1292; 89 L.Ed.2d 452 (1986); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91; 98 S.Ct. 2018; 56 L.Ed.2d 611 (1978). Second, it is well-settled that where a plaintiff does not suffer a constitutional injury at the hands of municipal employees, there can be no municipal liability under *Monell*. *City of Los Angeles v. Heller*, 475 U.S. 796, 799; 89 L. Ed.2d 806; 106 S. Ct. 1571 (1986); *Wilson v. Morgan*, 477 F.3d 326, 340

7

(6th Cir. 2007).

### I. Plaintiff Has Failed to Identify a Requisite City Policy, Practice or Procedure that Caused the Alleged Constitutional Violations.

In discovery, which closed on January 20, 2025 (PageID.177), the City sought to ascertain the basis for Plaintiff's alleged *Monell* claim, including the identification of any specific policies, practices, and/or customs and any factual support for the claim. (Ex. 2 at 2, 5.) The City also asked Plaintiff questions on the topic at her deposition. (Ex. 4 at 77:5-20.) Tellingly, Plaintiff's Interrogatory Responses identified alleged violations of City policy by Defendants Giaquinto and DiGuiseppe. (Ex. 2 at 3-5.) If anything, these Responses bolster the City's defense here and reenforce why Plaintiff's *Monell* claim must be dismissed. Far from being the driving force causing any alleged unconstitutional violation against Plaintiff, these DPD policies were implemented trying to prevent and prohibit such conduct in the first place. Plaintiff has it **backwards**.

Plaintiff's Interrogatory Responses expressly identify DPD policies that she claims Defendants Giaquinto and DiGuiseppe **violated**, including: DPD policies "102.3 - 6.7 City Property," "102.3-6.14 Job Standards," "102.3-6.17 Off Duty Police Action," "102.3-6-22 Truthfulness," and "102.3-7.1 Communication." (Ex. 2 at 2-5.) Plaintiff continued that Defendants Giaquinto and DiGuiseppe allegedly violated "102.3 - 6.6 Authority, Misuse," that "Defendant Giaquinto and Defendant DiGuiseppe used their badges, titles and status in the Detroit community to enlist

8

Defendant Rinehart and Defendant Doherty to assist in the false report and arrest warrant of Plaintiff." (*Id.* at 3.)

Some more specifics from the Policy text include: "102.3-6-17 Off Duty Police Action" prohibits "Rendering assistance or advising parties in civil matters (except to prevent a breach of the peace or to quell a disturbance actually commenced)" and "Taking police action as a representative of the DPD, off-duty and outside the jurisdiction of the city of Detroit, absent a felony committed in the member's presence that presents a grave risk to the public welfare." (Ex. 3 at DET0060; *see also id.* at DET0041 ("Detroit officers have authority only in the City of Detroit") and DET0033 ("Engaging or attempting to take police action when off duty is principally regarded as a prohibited act by DPD Code of Conduct").)

Plaintiff's Interrogatory Responses also makes a generic quotation of the Fourth Amendment and a reiteration of the alleged actions by Defendants Giaquinto and DiGuiseppe that would violate DPD Policy. (Ex. 2 at 5.) Plaintiff's deposition testimony similarly failed to identify any specific City policy, practice, and/or custom that caused any alleged constitutional violation, and Plaintiff offered only speculation: "I am sure there's a lot of them." (Ex. 4 at 77:5-20, 72:18-25.) These generalized assertions and conjecture fail to identify any specific City policy, practice, and/or custom that was the driving force behind the alleged constitutional violation, which is required for a *Monell* claim. Furthermore, to leave no doubt, the

9

City includes with this Motion just a few examples from the DPD Manual, Special Orders, and Training Directives of the robust policies and training required for DPD officers on the Fourth Amendment and requirements for lawful searches, seizures, warrants, and arrests. (Ex. 3 at DET0025 – 40, DET0069 – 82, DET0094 – 104.)

During discovery, Plaintiff also took the depositions of Sergeant Ken Butler and Sergeant Deanna Wilson, asking numerous questions about the DPD Code of Conduct and the methods of training officers on the Code's requirements. Sgt. Butler explained that the Code of Conduct is "kind of like the basis of everything," and he testified about the various types of training that DPD does related to the Code of Conduct, including in the Police Academy, part of the 40-hour (now 24-hour) block training, electronic updates provided through the MAS system, administrative messages, and "role call training at the start of your shift." (Ex. 5 at 67:9 – 68:17, 16:7 – 18:16.) Sgt. Butler agreed that "the department code of conduct for police officers, that's kind of like your Bible or your rule book of how you're supposed to conduct yourself as a Detroit police officer." (*Id.* at 18:12-16.)

Sgt. Wilson also testified concerning the different methods of training DPD officers receive regarding the DPD Code of Conduct as follows: it is "disseminated through teletypes, through special orders, through training directives, through our management awareness system, policies and procedures," there is "rollcall dissemination of the Code of Conduct and it has to be read usually seven days at

10

rollcall," and "I also have a clipboard where it's maintained so they can review it." (Ex. 6 at 14:5 – 17:25.)

Given the robust policies that Plaintiff admits that the City had in place, Plaintiff should have voluntarily dismissed this *Monell* claim. Instead, Plaintiff refused to concur, requiring the City to burden the limited resources of this busy Court with this Motion. Discovery closed on January 20, 2025. (PageID.177.) Yet Plaintiff has not identified any specific City of Detroit "policy, practice or custom" that caused an alleged violation of Plaintiff's constitutional rights in this case.

Because Plaintiff has <u>not</u> identified any specific City of Detroit "policy, practice or custom" that caused an alleged violation of Plaintiff's constitutional rights, the *Monell* claim must be dismissed. *Pembauer*, 475 U.S. at 477-80. Summary Judgment for the City should be entered. Fed. R. Civ. P. 56(a).

**II. If Defendants Giaquinto's and DiGuiseppe's Summary Judgment Motion Is Granted, The City Must Be Dismissed As Well.**

It is well-settled that where a plaintiff does not suffer a constitutional injury at the hands of municipal employees, there can be no municipal liability under *Monell*. *City of Los Angeles v. Heller*, 475 U.S. 796, 799; 89 L. Ed.2d 806; 106 S. Ct. 1571 (1986); *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007). Thus, if the Court grants Defendant Giaquinto's and DiGuiseppe's anticipated Motion for Summary Judgment, finding no underlying constitutional violation, the City cannot be held liable under *Monell*. That would be an additional, independent basis for

11

dismissing Plaintiff's lone *Monell* municipal liability claim against the City of Detroit on summary judgment. Fed. R. Civ. P. 56(a).

## CONCLUSION

For the above reasons, Defendant City of Detroit respectfully requests that this Honorable Court grant its motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and that judgment be entered dismissing Plaintiff's case against the City of Detroit with prejudice.

DATED: February 14, 2025                    Respectfully submitted,

   /s/ *Ben Patterson*
**BEN PATTERSON (P85118)**
Senior Assistant Corporation Counsel
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 500
Detroit, MI  48226
(313) 237-5082

**LOCAL RULE CERTIFICATION:**

I, Ben Patterson, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

*/s/ Ben Patterson*
Ben Patterson

**Certificate of Service**

I hereby certify that on February 14, 2025, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record with the Court.

*/s/ Ben Patterson*
Ben Patterson